## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DONNA M. PERROTTI, as Executor of the** **Estate of KELLY ANN DENNY STOOPS,** **Deceased** 25 Pollari Circle Newark, Delaware 19702 Plaintiff | : : : : : : : | ALLENTOWN DIVISION CIVIL ACTION NO. |
| v. | : : | COMPLAINT |
| **ERIC R. RITTENHOUSE, M.D.** 440 S. 15th Street Allentown, Pennsylvania 18102 and **LEHIGH VALLEY WOMEN'S MEDICAL** **SPECIALTIES** 440 S. 15th Street Allentown, Pennsylvania 18102 and **SACRED HEART HOSPITAL OF** **ALLENTOWN** 421 Chew Street Allentown, Pennsylvania 18102 and **SACRED HEART HEALTHCARE SYSTEM** 421 Chew Street Allentown, Pennsylvania 18102 Defendants | : : : : : : : : : : : : : : : : : : : : : : : : : | **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Donna M. Perrotti, as Executor of the Estate of Kelly Ann Denny Stoops, Deceased, by and through her attorneys, Kline & Specter, P.C., alleges as follows:

**PARTIES**

1.      Plaintiff, Donna M. Perrotti, ("Perrotti") is an individual and citizen of the State of Delaware residing at 25 Pollari Circle, Newark, Delaware 19702 and files this Complaint Individually and as Executor of the Estate of Kelly Ann Denny Stoops ("Denny Stoops").

2.      Letters Testamentary were granted to Donna M. Perrotti by the Register of Wills of Lehigh County on July 16, 2015.  (Letters Testamentary are attached hereto as "Exhibit A.")

3.      Decedent Kelly Ann Denny Stoops was born February 12, 1960 and died July 12, 2015.

4.      Decedent Kelly Ann Denny Stoops is survived by the following beneficiaries under the Wrongful Death Act, 42 Pa. C. S. § 8301:

    a.      Vincent B. Stoops (son)

    b.      Andrew C. Stoops (son)

    c.      Rosaria M. Stoops (daughter)

5.      Defendant, Eric R. Rittenhouse, M.D. ("Dr. Rittenhouse") is a physician duly licensed to practice medicine in the Commonwealth of Pennsylvania specializing in the medical field of obstetrics and gynecology with an office, medical practice and place of business, among other places, at 440 S. 15th Street, Allentown, Pennsylvania 18102.  Plaintiff is asserting a professional negligence claim against this Defendant.   A Certificate of Merit for this Defendant is attached hereto as Exhibit "B."

6.      Defendant Lehigh Valley Women's Medical Specialties ("LVWMS") is a corporation or other jural entity organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania with an address of 440 S. 15th Street, Allentown, Pennsylvania 18102.  Plaintiff is asserting a professional negligence claim against this Defendant for the

professional negligence of its agents, employees and servants, as stated more fully herein.  A Certificate of Merit for this Defendant is attached hereto as Exhibit "C."

7.      Defendant Sacred Heart Hospital of Allentown ("Sacred Heart") is a corporation, medical institution and/or facility operating and existing in accordance with the laws of the Commonwealth of Pennsylvania, with its principal place of business located at Fourth and Chew Streets, Allentown, Pennsylvania 18102.  Plaintiff is asserting a professional negligence claim against this Defendant.   A Certificate of Merit for this Defendant is attached hereto as Exhibit "D."

8.      Defendant Sacred Heart HealthCare System ("SHHS") is a corporation, medical institution and/or facility operating and existing in accordance with the laws of the Commonwealth of Pennsylvania, with its principal place of business located at Fourth and Chew Streets, Allentown, Pennsylvania 18102.  Plaintiff is asserting a professional negligence claim against this Defendant.   A Certificate of Merit for this Defendant is attached hereto as Exhibit "E."

9.      At all times material hereto, the Defendants and their agents or employees as identified specifically by name or description herein, and specifically including Dr. Rittenhouse, as well as any and all persons involved in the medical care, diagnosis, and treatment care of Kelly Ann Denny Stoops at Sacred Heart on July 10, 2015 and July 11, 2015, who are known to Defendants herein and unknown to Plaintiff at this time and who will be identified during the course of discovery, worked together as inter-related healthcare providers to arrange, render and coordinate comprehensive medical care, treatment and services to Kelly Ann Denny Stoops, as part of an integrated approach to healthcare.

10.      At all times material hereto, a physician-patient relationship, or healthcare provider-patient relationship, or fiduciary-beneficiary relationship, or a special relationship

3

existed between Kelly Ann Denny Stoops, the Defendants and their agents or employees, as identified specifically by name or description herein, and specifically including Dr. Rittenhouse, as well as any and all persons involved in the medical care, diagnosis, and treatment care of Kelly Ann Denny Stoops at Sacred Heart on July 10, 2015 and July 11, 2015, who are known to Defendants herein and unknown to Plaintiff at this time and who will be identified during the course of discovery.

11.     Kelly Ann Denny Stoops relied on the medical knowledge, skill, advice, evaluations, diagnoses, and treatment provided by the Defendants and their agents/employees, as identified specifically by name or description herein, and specifically including Dr. Rittenhouse, as well as any and all persons involved in the medical care, diagnosis, and treatment care of Kelly Ann Denny Stoops at Sacred Heart on July 10, 2015 and July 11, 2015 who are known to Defendants herein and unknown to Plaintiff at this time and who will be identified during the course of discovery.

12.     Nevertheless, the Defendants and their agents/employees, as identified specifically by name or description herein, and specifically including Dr. Rittenhouse, as well as any and all persons involved in the medical care, diagnosis, and treatment care of Kelly Ann Denny Stoops at Sacred Heart on July 10, 2015 and July 11, 2015, who are known to Defendants herein and unknown to Plaintiff at this time and who will be identified during the course of discovery, failed to provide Kelly Ann Denny Stoops with appropriate medical knowledge, skill, advice, evaluations, diagnoses, and treatment.

13.     The negligence and recklessness of the Defendants and their agents or employees, as identified specifically by name or description herein, and specifically including Dr. Rittenhouse, as well as any and all persons involved in the medical care, diagnosis, and treatment care of Kelly Ann Denny Stoops at Sacred Heart on July 10, 2015 and July 11, 2015, who are

4

known to Defendants herein and unknown to Plaintiff at this time and who will be identified during the course of discovery, each of them, jointly and severally, caused Kelly Ann Denny Stoops the injuries alleged herein, or each was a substantially contributing factor or each placed Kelly Ann Denny Stoops at an increased risk for such injuries as described herein.

14.     Kelly Ann Denny Stoops' injuries as alleged herein were caused solely and exclusively by the negligence and carelessness of the Defendants individually, jointly and severally, and their agents or employees, as identified specifically by name or description herein, and specifically including Dr. Rittenhouse, as well as any and all persons involved in the medical care, diagnosis, and treatment care of Kelly Ann Denny Stoops at Sacred Heart on July 10, 2015 and July 11, 2015, who are known to Defendants herein and unknown to Plaintiff at this time and who will be identified during the course of discovery and were due in no manner whatsoever to any act or failure to act on the part of Kelly Ann Denny Stoops.

## JURISDICTION AND VENUE

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendants can be found in, reside, or transact business in this District.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the claim occurred in this District.

17.     Jurisdiction is proper in this District pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $150,000.00 and is between citizens of different states.

## OPERATIVE FACTS

### A.    July 10, 2015 Admission to Sacred Heart Hospital

18.    On July 10, 2015, Kelly Ann Denny Stoops was admitted to Sacred Heart onto Dr. Rittenhouse's service for a diagnostic laparoscopy and hysteroscopy for chronic pelvic pain to be performed by Dr. Rittenhouse.

19.    Kelly Ann Denny Stoops had a relevant past medical history of mixed urinary incontinence, urethral hypomobility, incomplete uterine prolapse, left paratubal cyst, suprapubic sebaceous gland cyst, uterine fibroids and placement of a transobturator pubovaginal sling.

20.    Prior to surgery, on March 18, 2015, Kelly Ann Denny Stoops underwent a CT scan of the abdomen and pelvis with oral contrast at Sacred Heart.  The clinical indications were left upper quadrant pain and epigastric pain.  The impression included a 4 cm cystic mass or focal fluid in the right adnexa, possibly a right ovarian cyst; 2.4 cm left ovarian cyst; 3.3 cm nodular area in the anterior uterus, possibly a fibroid; mild hepatomegaly.  A pelvic ultrasound was recommended for further evaluation.

21.    On March 27, 2015, Kelly Ann Denny Stoops underwent a pelvic ultrasound at Sacred Heart.  According to the report, the examination was technically difficult due to patient body habitus and bowel gas.  The impression included uterine fibroids; simple bilateral cysts; and endometrial thickness of 6 mm, which was noted to be mildly thickened for a postmenopausal woman.

22.    On April 4, 2015, Kelly Ann Denny Stoops saw Dr. Rittenhouse for an office visit.  According to the office note, Ms. Denny Stoops' symptoms began six months prior and were moderate and intermittent and not relieved by anything.  The pain was located in the left lower abdomen/pelvis.  The symptoms were associated with bloating and were not aggravated by anything.  The physical exam was significant for an irregular shaped fibroid, adnexal tenderness

6

and bladder tenderness.  Under Assessment/Plan, Dr. Rittenhouse noted:  "Based on today's findings by exam and her history of extensive bladder repair previously for prolapse, dysfunctional bleeding and persistent lower abdominal/bladder pain favoring the left side I am suspicious she may have interstitial cystitis so we'll order KCl testing and an endometrial/uterine ultrasound . . . ."

23.    On April 13, 2015, Kelly Ann Denny Stoops underwent a transvaginal ultrasound ordered by Dr. Rittenhouse.  The impression included multiple uterine fibroids of mixed sizes; multiple ovarian cysts of both ovaries; and the endometrial cavity was noted as irregular with a probable single polyp noted.  The endometrial stripe was noted to be 11 mm and appears inhomogeneous.   SIS testing to evaluate endometrium was recommended.

24.    On May 11, 2015, Kelly Ann Denny Stoops saw Dr. Rittenhouse for an office visit.   According to the office note, Ms. Denny Stoops presented for abnormal bleeding. Frequency was listed as menorrhagia.  A saline-infused sonohysterography was performed and read by Dr. Rittenhouse.  The findings included abnormal endometrial lining secondary to multiple submucosal fibroids.  No definitive intracavitary polyp or other masses were noted. Endometrial sampling was recommended.

25.    On June 1, 2015, Kelly Ann Denny Stoops saw Dr. Rittenhouse again for an office visit for an endometrial biopsy.  According to the office note, Ms. Denny Stoops was also there to discuss a hydrothermal ablation versus hysterectomy.  Her history of present illness was described as abnormal bleeding; frequency was described as menorrhagia; problem was new onset; associated symptoms include back pain, bloating, cramps, headache and pelvic pain. According to the office note:

> Today's visit included an extra 15 minute discussion about the different options including endometrial ablation versus hysterectomy.   I again reiterated my previous concern that her underlying pelvic pain issue could

be related to her bladder in which I thought she had interstitial cystitis and
not something directly related to her uterus . . . The KCl test has been
rescheduled to 6/8/15.

Next issue is whether or not to do a hysterectomy or an endometrial
ablation and here again I explained that if the KCl testing would be
negative then it would be more likely it was a pelvic issue and the
hysterectomy would probably make the most sense.

However, if the bladder turns out to be the cause of the pain and then the
endometrial ablation makes the most sense because she will have a shorter
recovery time.

26.     On June 8, 2015, Kelly Ann Denny Stoops had a nursing visit at LVWMS for

KCl testing.  Her history of present illness was described as interstitial cystitis.  Onset was

described as gradual and acute with associated symptoms of urgency, lower abdomen pain and

pelvic pain.  Her pelvic pain and urinary frequency score (PUF) was noted as 17.  The results

KCl test were negataive.

27.     On June 18, 2015, Kelly Ann Denny Stoops saw Dr. Rittenhouse for an office

visit related to her pelvic pain and abnormal bleeding.  Her pelvic pain was described as

moderate and intermittent.  According to the note, at the time of the visit her pain was sharp and

located in the lower abdomen.  As stated in the note:

She again describes the pain as a steel rod shooting out of her abdomen
when she is in the seated position slightly leaning forward.   As we
discussed this further I am less inclined to believe it is related to anything
with her uterus and more likely is related to the previous bladder sling she
had placed.  She also reports today, that at the time of her bladder surgery
the robot was used to perform laparoscopic surgery which she had not
previously explained and we still have not received any records.

She had never told us there was a laparoscopic component with the robot.
Now I am completely unsure what exactly she had performed but I am
more inclined to believe that some sort of abnormality related to her
bladder surgery or related to the fall she took after her surgery that may
have led to scar formation or nerve entrapment etc. to explain the strange
symptoms she has; nevertheless, I am requesting we get the records from
Dr. Lucente to see exactly what was performed, since she is not exactly
sure what happened.  She is also requesting the possibility of a diagnostic
laparoscopy to be performed at the time of her hysteroscopy to see if there
is any underlying cause for her chronic pelvic pain since her bladder
surgery and I think this request makes sense and agree.

8

28.     Dr. Rittenhouse's Assessment/Plan included a hysteroscopy and dilation and curettage combined with a diagnostic laparoscopy to evaluate the pelvis for the cause of pain. According to the note:

> Once the dilation and curettage is performed and, if there is no obvious source of pain, or we have already corrected itself,,, [sic] I believe an endometrial ablation would be adequate treatment. She is happy with this plan. . . . After reviewing her records from her previous questionable Robotic surgery, performed along with her bladder mesh sling, we can decide whether it may be more related to the sling surgery as I suspect. Her [pain] may not actually be from anything directly involving her uterus. She also informed me she may be interested in surgical removal of her uterus if no obvious source of pain would be found.

29.     On June 29, 2015, Kelly Ann Denny Stoops underwent a pre-admission history and physical performed by Dr. Rittenhouse. The planned procedures were listed as diagnostic laparoscopy, hysteroscopy and D/C for the listed indications of pelvic pain and endometrial hyperplasia.

30.     On July 10, 2015, Kelly Ann Denny Stoops was admitted to Sacred Heart onto Dr. Rittenhouse's service to undergo the planned diagnostic laparoscopy, hysteroscopy and D/C to be performed by Dr. Rittenhouse. At or around 0715 hours, Ms. Denny Stoops' Hemoglobin was 13.9, her Hematocrit was 41.2 and her blood pressure was 113/80.

31.     At or around 0855 hours, Kelly Ann Denny Stoops was taken to the operating room. According to the anesthesia record, incision time was 0955 hours. Surgery was notable for easy intubation. The anesthesia record reveals that Ms. Denny Stoops' blood pressure steadily went up for about 45 minutes into the operation and then returned to baseline.

32.     According to Dr. Rittenhouse's operative note, the procedures performed were diagnostic laparoscopy, hysteroscopy and dilation and curettage with a small anterior dissection of the one port site due to a bleeding aberrant arterial, which was suture ligated with the help of

Venkata A. Kanthimathinathan, M.D. ("Dr. Kanthimathinathan").  The operative note states, in

relevant part:

> . . . Laparoscopy then proceeded by placing a Veress needle through the
> umbilicus into the abdominal cavity.  The opening pressure was 4 mm Hg.
> CO2 gas was insufflated to a pressure of 20 mm Hg.  Trendelenburg
> positioning was then performed and the right lower quadrant 6 mm port
> was placed after transillumination under direct visualization.  Once the
> port was placed, a large amount of arterial blood began to pour through the
> port site.  Prior to any other laparoscopic procedure, we removed the port
> and placed two sutures in the subcutaneous tissues through the peritoneum
> and tied to attempt to catch this vessel.  We were unsuccessful with this
> and a small hematoma was forming on the right peritoneal side.  We then
> extended the port site to approximately 4 cm and dissected down.  At this
> point, Dr. Venkat presented to the room to assist in dissecting out the
> vessel, clamping, and tying it off.  Once it was tied off at both areas, that
> incision was closed with deep sutures and a subcuticular stitch as well as
> skin glue and steri-strips.
>
> We then placed a left lower quadrant port again under direct visualization
> after trans-illumination…  We then carefully evaluated the pelvis, which
> showed there were sutures that were visible from the sacral colpopexy
> through the uterosacral ligaments and three different tied knots.  This is
> probably what may be causing her pelvic pain as there was no other
> abnormality other than an anterior uterine fibroid with normal ovaries, no
> adhesions, and no endometriosis.

33.    The surgical pathology results found no hyperplasia, malignancy no other specific

abnormalities.

34.    Following surgery, Kelly Ann Denny Stoops remained on Dr. Rittenhouse's

service, and he was responsible for her post-operative care, including the administration of

medication.

35.    At or around 1114 hours, Kelly Ann Denny Stoops' blood pressure was 145/82.

The PACU note states that "patient complains of pain.  To medicate for pain."

36.    Between 1120 and 1212 hours, Kelly Ann Denny Stoops was administered 200

mcg Fentanyl divided into eight 25 mcg doses.  Kelly Ann Denny Stoops was an opioid naïve

patient.

37.    At or about 1145 hours, the PACU note states that "patient reports no improvement in pain.  To continue to medicate for pain."

38.    Between 1224 hours and 1255 hours, Kelly Ann Denny Stoops was administered 2 mg I.V. Dilaudid divided into four 0.5 mg doses.

39.    At or around 1232 hours, the progress note entered by anesthesiologist Dr. Kohan states "GETA [general endotracheal anesthesia] without any known anesthetic complications. Moderate analgesia in PACU.  Sites dry.  To SPU.  Abdomen remains soft.  Vitals satisfactory."

40.    At or around 1245 hours, Kelly Ann Denny Stoops' blood pressure was recorded as 115/65.

41.    At or around 1304 hours, the PACU note reports the patient's vital signs as stable.

42.    At or around 1315 hours, Kelly Ann Denny Stoops' pulse was recorded at 71 bpm; her blood pressure was 114/57.  The SPU notes that Kelly Ann Denny Stoops' right side was distended and her O2 sat had decreased to 79.  According to the note, Dr. Rittenhouse was notified that Ms. Stoops was experiencing burning pain; her abdomen was distended; and her O2 sat had decreased to 79%.

43.    At or around 1400 hours, Kelly Ann Denny Stoops' heart rate was 82 bmp and her blood pressure was 116/68.  A prescription for five 50 mcg Fentanyl patches was dispensed.

44.    At or around 1415 hours, a 50 mcg Fentanyl patch was applied to Kelly Ann Denny Stoops' left chest.  A 50 mcg Fentanyl patch contains a reservoir of 5 to 8.4 mg of Fentanyl.  Fentanyl patches are contraindicated in opioid naïve patients; patients who require pain relief due to post-operative pain; and patients who require opioid analgesia for a short period of time.  At this time, Kelly Ann Denny Stoops' O2 sat was 98%.

45.    At or around 1450 hours, Kelly Ann Denny Stoops' blood pressure was recorded as 110/51.

46.    At or around 1455 hours, the SPU note states, "Patient out of bed with assist to bedside commode.  Voided 100 cc blood tinged urine; one medium sized clot noted.  O2 placed at 2L."

47.    At or around 1545 hours, the SPU note states, "Patient pulse ox continues to drop when in deep sleep . . . O2 increased to 3L; p ox holding at 97-98%"

48.    At or around 1600 hours, the SPU note states, "Pt pulse ox 995 3LPM.  Ice bag prefilled, reapplied to right lower quadrant.  Abdomen soft.  No bleeding to peripad.  No active bleeding or palpable hematoma to RLQ."

49.    At or around 1615 hours, Kelly Ann Denny Stoops' pulse was recorded as 86 bpm.  Her blood pressure was 118/67.

50.    At or around 1655, the nurse progress note states, "Patient's family requests to speak with physician, upset stating 'I've been here since 2:30 pm waiting for him to come talk to me.'  Physician paged."

51.    At or around 1722 hours, the nurse progress note states, "Patient requests to get out of bed to bedside commode.  Positive void.  Physician re-paged.  Ice bag filled."

52.    At or around 1742 hours, the nursing note states, "Patient noted to have decreased pulse ox while sleeping.  Attempt to decrease oxygen to 1.5 LPM, pulse ox decreased to 88%.  On 2 LPM patient sats 93-94% while sleeping, 98% while awake.  Patient in and out of sleep at this time.  Family bedside.  Physician called into unit, given patient update.  Nurse and Anesthesia recommending patient stay overnight.  Physician agreeable to obtain bed on 7[th] Tower."

53.    At or around 2011 hours, Kelly Ann Denny Stoops' pain was listed as 2/10.  She was administered 30 mg of Toradol via I.V. push.

54.     At or around 2100, the nursing note states, "Patient received from ASPU, alert, oriented x3, complains of right quadrant pain, medicated with Toradol 30 mg IVP. Right lower quadrant surgical incision old blood noted, no active bleeding at present time. Vital signs stable. VSS will continue to monitor."

55.     At or around 2200, the nursing progress note states, "Patient received from SPU, alert, oriented x3. Complains of right lower quadrant pain. Medicated with Toradol 30 mg. No active bleeding at present time. Vital signs stable. VSS voiding without difficulty. Call bell in reach. Will continue to monitor."  Ms. Denny Stoops is also noted to be anxious and her abdomen is noted to be soft, non-tender.

56.     On July 10, 2015, an untimed prescription for 30 Percocet 5/325 was ordered.

57.     On July 11, 2015, at or around 2400 hours, the nursing note states that on abdominal exam all quadrants were soft/non-tender.

58.     At or around 0400 hours, Kelly Ann Denny Stoops' pulse was recorded as 77 bpm, her pulse was 103/69, her respiratory rate was 20 and her pain was listed as 0/10.

59.     At or around 0654 hours, the nursing note states, "Patient slept all night. No active bleeding noted, patient request to speak with physician before discharge."

60.     At or around 0700 hours, the nurse assistant note lists Kelly Ann Denny Stoops' breakfast and lunch intake as 25-50%.

61.     At or around 0800 hours, Kelly Ann Denny Stoops' pulse was recorded as 80 bpm, her blood pressure was 107/62, her respiratory rate was 17 and her pulse ox was 96% on room air.  Her pain was listed as 8/10.  The nursing note states bowel sounds were present in all quadrants; abdomen soft all quadrants; and the abdominal exam was tender at the surgical site. Pain was listed as 6/10 and the note states will medical per orders.   Ms. Denny Stoops

13

complained of nausea and was on a clear liquid diet. According to the note, Ms. Denny Stoops stated, "My abdomen is better today. Yesterday it was burning. Today it's just a little angry."

62.     At or around 0935 hours, the 24-Hour Post Anesthesia progress note authored by Dr. Kohan states, "One episode of emesis on the floor. Resolved. Clear fluids now tolerated. . . . Awake and coherent. No apnea noted on floor. Duragesic path ordered per Gyn." Ms. Denny Stoops' pain was listed as 2/10.

63.     At or around 0949 hours, Ms. Denny Stoops' pain was listed as 8/10. 30 mg of Toradol and 10 mg of Reglan were administered via I.V. push.

64.     At or around 0953 hours, the nursing progress note states, "Patient had episode of nausea and vomiting – emesis x 1. Reglan given. Also complains of abdominal discomfort – pain meds given per orders. Spoke with Dr. Rittenhouse earlier and provided update."

65.     At or around 1019 hours, Ms. Denny Stoops' pain was listed as 5/10.

66.     At or around 1200 hours, Kelly Ann Denny Stoops' pulse was 77 bpm, her blood pressure had dropped to 98/50, her respiratory rate was 18 and her pulse ox was 95% on room air. Her pain was noted to be 5/10. The nursing note states, "Patient states she is feeling better, pain and nausea improved. No other changes. Zoloft given per orders."

67.     At or around 1214 hours, Dr. Rittenhouse ordered Kelly Ann Denny Stoops' discharge.

68.     At or around 1215 hours, Dr. Rittenhouse's progress note states:    abdomen soft/non-tender/non-distended.        Positive    bowel    sounds.        Bladder:    positive    voids. Assessment/plan: Post-operative day diagnosis LPY with post-op mild hypoxia now resolved. Post-operative day #1: Doing well. Increase ambulation and discharge home later today with instructions.

14

69.     At or around 0202 hours, the nursing progress note states, "Patient complains of nausea and emesis x1.  Zofran given.  Patient encouraged to follow bland diet as tolerated at home."

70.     At or around 0240 hours, the nursing note states, "I.V. and tele discontinued. Patient educated reason discharge meds and follow up.  Verbalized understanding.  Daughter present to drive patient home.  Left via wheelchair in stable condition with prescription and belongings."

71.     On July 13, 2015, at or around 0931 hours, Dr. Rittenhouse dictated a discharge summary, which states in relevant part:

> Hospital Course:     The patient underwent a diagnostic laparoscopy, hysteroscopy, D/C with a minor complication of an intraabdominal wall small bleed with a loss of approximately 150 cc, which was repaired and corrected at the time of surgery.  Post-operatively, she had increased amount of pain and her O2 sats required assistance with a nasal cannula to maintain them in the 90's.  She had no complaints of shortness of breath or tachycardia or other abnormality.  After several hours, her pain was under good control, but required a large amount of Fentanyl.  She was given a Fentanyl patch and kept overnight on Telemetry to further increase her pulmonary function and Respiratory was consulted to increase pulmonary toilet.
>
> On hospital day #1 at 11 AM she was voiding, ambulating, and tolerating PL well.  She was sitting up.  Lungs were clear.  Heart was regular rate and rhythm.  She had done well overnight.  She was joking with me, asking how soon she could have her hysterectomy performed.   We discussed the surgery and the minor complication requiring some extra stitches in her right lower quadrant abdominal wall.  She rated her pain as 2/10 while on the Fentanyl patch, but had gotten a good night's sleep.  She was having no concerns at that time, other than how soon she could schedule a hysterectomy to hopefully remove the uterus and maybe eliminate this chronic pain and the issue with the hyperplasia of the endometrium.  I offered to switch her to Percocet; however, she told me she routinely throws up 3 to 4 times a day and those kinds of meds will probably make her throw up more, so she requested to stay on the

15

Fentanyl patch. I agreed and gave her a small prescription, which she also stated she would use only as needed and will keep the rest for her upcoming hysterectomy, which will be scheduled next week. At the time of discharge, she was very jovial and anxious to get home. She was hungry and was going to eat her lunch and then leave.

Discharge Instructions and Medications: Medications were Fentanyl 50 mcg patches, #5 was given. . . . If she has any problems, she is to call the office immediately. If not, I will see her back in 2 weeks, which she already has scheduled for July 16, 2015.

72.     According to Ms. Denny Stoops' daughter, Rosaria ("Sally"), at the time of discharge, Ms. Denny Stoops threw up in the elevator while exiting the hospital and again at the curb while waiting for her car. According to Sally, Ms. Denny Stoops was nervous and in a lot of pain. Upon arriving at Sally's home, Ms. Denny Stoops and Sally called Dr. Rittenhouse, who assured them Ms. Denny Stoops' symptoms were normal. When Sally left to fill Ms. Denny Stoops' prescriptions at the pharmacy, Ms. Denny Stoops vomited three more times. Dr. Rittenhouse was again called but did not return the call until Sally had him paged later that evening. At that time, Dr. Rittenhouse spoke to Sally and was informed that Ms. Denny Stoops was still in a lot of pain and still throwing up.

73.     According to the Lehigh County Coroner's Office Investigation Report, on July 12, 2015, Ms. Denny Stoops again experienced vomiting on July 12, 2015. Sally gave her crackers and Gatorade to help alleviate her nausea. At or around 1330 hours, Ms. Denny Stoops was checked on and found sleeping. At or around 1800 hours, Sally checked on her mother and found that she was not breathing. 911 was called. Ms. Denny Stoops was found lying on her right side facing the wall. A clear foamy liquid was seen exiting her mouth once she was turned to the supine position. Prescriptions for Oxycodone-Acetaminiophen 325 and Fentanyl patches were found in her room. The Fentanyl patches were unopened.

16

74. According to the autopsy report performed by Dr. Barbara Bollinger of Forensic Pathology Associates, Ms. Denny Stoops' cause of death was complications of laparoscopy and hysteroscopy for evaluation of pelvic pain. Hypertensive cardiovascular disease is listed as a significant contributory cause. Final pathologic diagnoses include extensive hemorrhage, and muscular soft tissues of right lower abdominal quadrant with sutures. Toxicology showed concentrations of 5.5 mg/ml of Fentanyl; 2.2 mg/ml of Norfentanyl; and 447 mg/ml of sertraline. The external examination revealed a 50 mcg/hour clear Fentanyl patch over the left clavicular region. The physical examination further descibed: "The stomach contains approximately 60 ml of thin brown liquid and is without identifiable fragments of pill fragments or food."

**B.    Dr. Rittenhouse's history of substance abuse**

75. According to a Consent Agreement and Order filed with the Commonwealth of Pennsylvania Department of State on July 28, 2011 in the matter of the Commonwealth of Pennsylvania Bureau of Professional and Occupational Affairs v. Eric Ray Rittenhouse, M.D., Dr. Rittenhouse was ordered by the Probable Cause Screening Committee of the Pennsylvania State Board of Medicine to attend a Mental and Physical Examination to be performed by Roger J. Cadieux, M.D. ("Dr. Cadieux") on April 19, 2011. The Consent Agreement and Order time-stamped July 28, 2011 are attached hereto as Exhibit "F."

76. On April 19, 2011, Dr. Cadieux determined that Dr. Rittenhouse had a history of abuse of substances including alcohol. At that time, Dr. Rittenhouse was enrolled in the Pennsylvania Physician's Program for substance abuse. It was recommended that Dr. Rittenhouse be enrolled in the Disciplinary Monitoring Program for at least three years. Id. at p. 2.

77. According to the Consent Agreement, Dr. Rittenhouse violated the Medical Practice Act and was unable to practice the profession of medicine with reasonable skill and

17

safety by reason of addiction. Accordingly, Dr. Rittenhouse's medical license was indefinitely suspended. The suspension was stayed in favor of three years of probation subject to a number of terms and conditions, including compliance with the Professional Health Monitoring Program and the Disciplinary Monitoring Unit, compliance with any recommended treatment, support group attendance, and abstention from the use of alcohol and controlled substances. Id. at p. 2-3, 6, 8.

78.     According to the terms of his probation, Dr. Rittenhouse was forbidden from practicing medicine unless recommended by an approved treatment provider and permitted by Dr. Rittenhouse's case manager. Id. at p. 11.

79.     According to the terms of his probation, Dr. Rittenhouse was required to be monitored in any practice setting. Id.

80.     According to the Consent Agreement, any violation of the terms of his probation would result in immediate vacating of the stay order, termination of the period of probation, and activation of the suspension of his medical license. Id. at p. 15.

81.     All of the above terms were agreed to by Dr. Rittenhouse. Id. at p. 20.

82.     According to a Consent Agreement and Order filed with the Commonwealth of Pennsylvania Department of State on February 7, 2013 in the matter of the Commonwealth of Pennsylvania Bureau of Professional and Occupational Affairs v. Eric Ray Rittenhouse, M.D., Dr. Rittenhouse underwent a urine screen on September 15, 2012 that was positive for Meprobamate and Phentermine, Schedule IV drugs. The Consent Agreement and Order time-stamped February 7, 2013 are attached hereto as Exhibit "G."

83.     As a result of the positive urine screen, Dr. Rittenhouse was required to submit to an inpatient treatment facility on October 15, 2012 for five days for evaluation. Id. at p. 2.

84.     Following the five day inpatient evaluation, it was recommended that Dr. Rittenhouse enter into a residential treatment program for up to ten weeks. Id.

85.     On October 23, 2012, the Probable Cause Screening Committee of the Pennsylvania State Board of Medicine issued a Preliminary Order vacating the stay of the suspension imposed on July 26, 2011. Id.

86.     On November 5, 2012, Dr. Rittenhouse entered into a residential treatment program at the Professional Renewal Center ("PRC") in Lawrence, Kansas. According to the Consent agreement, Dr. Rittenhouse's expected discharge date was January 18, 2013. Upon discharge, PRC was expected to provide to the Pennsylvania State Board of Medicine a discharge letter indicating that Dr. Rittenhouse was cleared to resume the practice of medicine, provided that he complied with the after-care requirements recommended by PRC. Id. at p. 3.

87.     According to the Consent Agreement, Dr. Rittenhouse violated the Medical Practice Act and was unable to practice the profession of medicine with reasonable skill and safety by reason of addiction. Accordingly, Dr. Rittenhouse's medical license was indefinitely suspended. The suspension was once again stayed in favor of three years of probation subject to a number of terms and conditions, including compliance with the Professional Health Monitoring Program and the Disciplinary Monitoring Unit, compliance with any recommended treatment, support group attendance, and abstention from the use of alcohol and controlled substances. Id. at p. 4, 7, 9-10.

88.     According to the terms of his probation, Dr. Rittenhouse was forbidden from practicing medicine unless recommended by an approved treatment provider and permitted by Dr. Rittenhouse's case manager. Id. at p. 12.

89.     According to the terms of his probation, Dr. Rittenhouse was required to be monitored in any practice setting. Id.

90.     All of the above terms were agreed to by Dr. Rittenhouse. Id. at p. 21.

91.     At all times material hereto, Dr. Rittenhouse provided care and treatment to Kelly Ann Denny Stoops while his medical license was indefinitely suspended by reason of addiction.

92.     At all times material hereto, Dr. Rittenhouse provided care and treatment to Kelly Ann Denny Stoops while on probation for violations of the Medical Practice Act by reason of addiction.

93.     At all times material hereto, Dr. Rittenhouse had been ruled by the Pennsylvania State Board of Medicine unable to practice the profession of medicine with reasonable skill and safety by reason of addiction.

94.     At no time was Kelly Ann Denny Stoops informed that Dr. Rittenhouse had a history of substance abuse; that Dr. Rittenhouse's license to practice medicine had been indefinitely suspended; that Dr. Rittenhouse was on probation for violating the Medical Practice Act; that Dr. Rittenhouse had been deemed unable to practice the profession of medicine with reasonable skill and safety by reason of addiction; that Dr. Rittenhouse had violated a prior period of probation by reason of a failed urine screen that was positive for the use of controlled substances; or that Dr. Rittenhouse had been required to be monitored while working in any practice setting.

95.     Upon information and belief, at all times relevant hereto, Dr. Rittenhouse was not being monitored while working as a physician at Sacred Heart Hospital as required by the Professional Health Monitoring Program.

96.     As a direct and proximate cause of Defendants' negligence, carelessness and recklessness, jointly, severally or in the alternative, Decedent, Kelly Ann Denny Stoops, was caused to suffer severe and significant injuries and damages including:

      a.     Battery;

b.   Unnecessary and not medically indicated Dilation and Curettage;

c.   Unnecessary and not medically indicated Hysteroscopy;

d.   Laceration of vessel;

e.   Hypoxia;

f.   Respiratory distress;

g.   Respiratory arrest;

h.   Opioid overdose;

i.   Nausea;

j.   Vomiting;

k.   Pain;

l.   Embarrassment;

m.   Humiliation;

n.   Mental anguish;

o.   Hospital and medical expenses;

p.   Funeral, burial and estate administration expenses;

q.   Loss of pleasures of life;

r.   Future loss of earnings and earnings capacity; and

s.   Death.

97.   The injuries to and death of Kelly Ann Denny Stoops, as described herein, were caused solely and wholly by reason of the negligent acts and omissions of all defendants, as set forth herein, and were not caused or contributed thereto by any action or inaction of Kelly Ann Denny Stoops.

## COUNT I – NEGLIGENCE

## PLAINTIFF, DONNA M. PERROTTI, AS EXECUTOR OF THE ESTATE OF KELLY ANN DENNY STOOPS, DECEASED v. DR. RITTENHOUSE; LEHIGH VALLEY WOMEN'S MEDICAL SPECIALTIES; SACRED HEART HOSPITAL OF ALLENTOWN; AND SACRED HEART HEALTHCARE SYSTEM

98.     The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

99.     Defendant Dr. Rittenhouse, and vicariously and derivatively, Defendants Lehigh Valley Women's Medical Specialties, Sacred Heart Hospital and Sacred Heart Healthcare System, were careless, negligent and reckless in one or more of the following respects:

a.      Failure to obtain and/or review Ms. Denny Stoops' prior medical records concerning her prior surgical history of intraperitoneal colpopexy;

b.      Failure to recognize, appreciate and consider Ms. Denny Stoops' prior surgical history of intraperitoneal colpopexy in diagnosing Ms. Denny Stoops' chronic pelvic pain;

c.      Failure to discuss with Ms. Denny Stoops that her prior surgical history of intraperitoneal colpopexy may be the source of her chronic pelvic pain;

d.      Failure to refer Ms. Denny Stoops to Dr. Lucente, the physician who performed her intraperitoneal colpopexy for further diagnosis and management of her chronic pelvic pain;

e.      Failure to refer Ms. Denny Stoops to a sub-specialist in Female Pelvic Medicine & Reconstructive Surgery for further diagnosis and management of her chronic pelvic pain;

f.      Failure to recognize and appreciate that Ms. Denny Stoops' endometrial stripe was unconcerning for a peri-menopausal female.

g.      Failure to recognize Ms. Denny Stoops' benign endometrial biopsy as reassuring in this patient;

h.      Failure to recognize that the Dilation and Curettage was not indicated in this patient;

i.      Failure to recognize that the Hysteroscopy was not indicated in this patient;

j.     Failure to timely and adequately consider and appreciate non-surgical and alternative treatment and management of Mr. Denny Stoops' pelvic pain;

k.     Failure to use proper precautions and safeguards to prevent intraoperative laceration of vessels;

l.     Failure to avoid intraoperative laceration during insertion of a right lateral port;

m.     Failure to timely, adequately or appropriately manage and treat Ms. Denny Stoops' post-operative hypoxia;

n.     Failure to timely, adequately or appropriately manage and treat Ms. Denny Stoops' post-operative nausea;

o.     Failure to timely, adequately or appropriately manage and treat Ms. Denny Stoops' post-operative vomiting;

p.     Failure to timely, adequately or appropriately manage and treat Ms. Denny Stoops' post-operative pain;

q.     Failure to timely, adequately or appropriately monitor Ms. Denny Stoops post-operatively;

r.     Failure to timely, adequately or appropriately monitor, consider or appreciate Ms. Denny Stoops' vital signs;

s.     Failure to timely, adequately or appropriately monitor, consider or appreciate Ms. Denny Stoops' pulse ox.

t.     Failure to appreciate and consider Ms. Denny Stoops' post-operative hypoxia;

u.     Failure to appreciate and consider Ms. Denny Stoops' post-operative nausea;

v.     Failure to appreciate and consider Ms. Denny Stoops' post-operative vomiting;

w.     Failure to appreciate and consider Ms. Denny Stoops' post-operative pain;

x.     Failure to appreciate and consider that a Fentanyl patch is contraindicated in opioid naïve patients; patients with post-operative pain; and patients who need short-term pain relief;

y.     Failure to adequately and appropriately prescribe pain medication in an opioid naïve patient like Ms. Denny Stoops;

z.      Failure to adequately and appropriately prescribe Ms. Denny Stoops Dilaudid;

aa.     Failure to adequately and appropriately prescribe Ms. Denny Stoops Fentanyl;

bb.     Failure to adequately and appropriately prescribe Ms. Denny Stoops Percocet;

cc.     Failure to adequately and appropriately prescribe Ms. Denny Stoops Tramadol;

dd.     Failure to timely, adequately or appropriately order a post-operative blood count in a patient who had an intraoperative laceration;

ee.     Failure to appreciate and consider the need to order a post-operative blood count in a patient who had an intraoperative laceration;

ff.     Failure to timely, adequately or appropriately order a post-operative blood count in a patient who had an intraoperative bleed;

gg.     Failure to appreciate and consider the need to order a post-operative blood count in a patient who had an intraoperative bleed;

hh.     Failure to timely, adequately or appropriately order imaging to assess the pre-peritoneal hematoma;

ii.     Failure to appreciate and consider the need to obtain imaging to assess the pre-peritoneal hematoma;

jj.     Failure to timely, adequately or appropriately appreciate, consider, respond to or provide adequate or appropriate advice regarding Ms. Denny Stoops reported symptoms following discharge; and

kk.     Failure to timely, adequately or appropriately recommend appropriate treatment and management of Ms. Denny Stoops's condition based on her reported symptoms following discharge;

**WHEREFORE**, Donna M. Perrotti, Individually and as Executor of the Estate of Kelly Ann Denny Stoops, deceased, respectfully demands judgment against Defendants for sums in excess of the local arbitration limits of $150,000.00, exclusive of prejudgment interest and post-judgment interest.  Plaintiff also demands punitive damages against Dr. Rittenhouse, Sacred Heart Hospital of Allentown and Sacred Heart Healthcare System.

## COUNT II – CORPORATE (DIRECT) NEGLIGENCE

### PLAINTIFF, DONNA M. PERROTTI, AS EXECUTOR OF THE ESTATE OF KELLY ANN DENNY STOOPS, DECEASED v. SACRED HEART HOSPITAL OF ALLENTOWN

100.    The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

101.    Defendant Sacred Heart owed a nondelegable duty directly to Kelly Ann Denny Stoops pursuant to *Thompson v. Nason*, 527 Pa. 330, 591 A.2d 703 (1991) and its progeny of case law, which consisted of:

> a.    A duty to use reasonable care in the maintenance of safe and adequate facilities and equipment;
>
> b.    A duty to select and retain only competent physicians;
>
> c.    A duty to oversee all persons who practice medicine within its walls as to patient care; and
>
> d.    A duty to formulate, adopt, and enforce adequate rules and policies to ensure quality care for the patients.

102.    The corporate negligence of Defendant Sacred Heart, under the doctrinal tenets set forth in *Thompson v. Nason* and its progeny of case law, consisted of the following:

> a.    Failure to select and retain physicians competent in obstetrics and gynecology;
>
> b.    Failure to select and retain physicians competent in the diagnosis and treatment of chronic pelvic pain; post-operative hypoxia; postoperative nausea; post-operative pain; and postoperative medication administration.
>
> c.    Failure to select and retain physicians competent in the evaluation and monitoring of patients presenting with signs and symptoms of chronic pelvic pain; intraoperative vessel laceration; intraoperative hematoma; postoperative hypoxia; postoperative nausea; post-operative pain;
>
> d.    Failure to select and retain physicians knowledgeable of the need to monitor vitals; obtain post-operative blood count;

and obtain post-operative imaging in a patient with intraoperative bleeding;

e.    Failure to oversee all persons who practice medicine within the four walls of the hospital to ensure the timely and appropriate diagnosis and management of patients, like Kelly Ann Denny Stoops who suffered intra- and postoperative complications;

f.    Failure to formulate, adopt and enforce adequate rules and policies with respect to the evaluation of a patient in the hospital with signs and symptoms of postoperative hypoxia;

g.    Failure to select and retain physicians competent in the administration of opiates, particularly in an opioid naïve patient like Kelly Ann Denny Stoops;

h.    Failure to select and retain physicians competent in the administration of a Fentanyl patch, including physicians aware of its contraindication in an opioid naïve patient like Kelly Ann Denny Stoops; a patient with post-operative pain like Kelly Ann Denny Stoops; and a patient who needs short-term pain relief like Kelly Ann Denny Stoops;

i.    Failure to terminate Dr. Rittenhouse despite his known and ongoing issues with addiction and/or substance abuse;

j.    Failure to terminate Dr. Rittenhouse despite his known and ongoing inability to practice medicine with reasonable skill and safety by reason of addiction and/or substance abuse;

k.    Failure to terminate Dr. Rittenhouse in 2012 when his urine screen was positive for Schedule IV controlled substances;

l.    Failure to terminate Dr. Rittenhouse in 2012 when his positive urine screen violated the terms of his probation with the Pennsylvania State Medical Board;

m.    Failure to terminate Dr. Rittenhouse in 2013 when he was admitted to a residential treatment facility for substance abuse;

n.    Failure to properly and appropriately monitor Dr. Rittenhouse's practice of medicine pursuant to the terms of his probation;

o.    Failure to properly and appropriately monitor Dr. Rittenhouse's practice of medicine to ensure patient safety;

p.    Failure to inform patients that Dr. Rittenhouse had known and ongoing issues with addiction and/or substance abuse;

q.    Failure to inform patients that Dr. Rittenhouse's medical license was indefinitely suspended;

r.    Failure to inform patients that Dr. Rittenhouse was placed on probation by the Pennsylvania State Medical Board;

s.    Failure to inform patients that Dr. Rittenhouse had violated the terms of his probation;

t.    Failure to inform patients that Dr. Rittenhouse had been admitted to a residential treatment facility for substance abuse; and

u.    Failure to inform patients that Dr. Rittenhouse required monitoring while practicing medicine.

**WHEREFORE,** Donna M. Perrotti, Individually and as Executor of the Estate of Kelly Ann Denny Stoops, deceased, respectfully demands judgment against Defendants for sums in excess of the local arbitration limits of $150,000.00, exclusive of prejudgment interest and post-judgment interest.  Plaintiff also demands punitive damages against Dr. Rittenhouse, Sacred Heart Hospital of Allentown and Sacred Heart Healthcare System.

## SECOND CAUSE OF ACTION – INFORMED CONSENT

## PLAINTIFF, DONNA M. PERROTTI, AS EXECUTOR OF THE ESTATE OF KELLY ANN DENNY STOOPS, DECEASED v. DR. RITTENHOUSE

103.    The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

104.    Defendant Dr. Rittenhouse, was careless, negligent and reckless in one or more of the following respects:

27

a.   Failure to recognize, appreciate and consider Ms. Denny Stoops' prior surgical history of intraperitoneal colpopexy in diagnosing Ms. Denny Stoops' chronic pelvic pain;

b.   Failure to discuss with Ms. Denny Stoops that her prior surgical history of intraperitoneal colpopexy may be the source of her chronic pelvic pain;

c.   Failure to refer Ms. Denny Stoops to Dr. Lucente, the physician who performed her intraperitoneal colpopexy for further diagnosis and management of her chronic pelvic pain;

d.   Failure to refer Ms. Denny Stoops to a sub-specialist in Female Pelvic Medicine & Reconstructive Surgery for further diagnosis and management of her chronic pelvic pain;

e.   Failure to recognize and appreciate that Ms. Denny Stoops' endometrial stripe was un-concerning for a peri-menopausal female.

f.   Failure to recognize Ms. Denny Stoops' benign endometrial biopsy as reassuring in this patient;

g.   Failure to recognize that the Dilation and Curettage was not indicated in this patient;

h.   Failure to recognize that the Hysteroscopy was not indicated in this patient;

i.   Failure to timely and adequately consider and appreciate non-surgical and alternative treatment and management of Mr. Denny Stoops' pelvic pain;

j.   Failure to timely, adequately and appropriately assess the risks, complications and alternatives to surgery;

k.   Failure to timely, adequately and appropriately inform Kelly Ann Denny Stoops of the material facts, risks, complications and alternatives to surgery; and

l.   Failure to provide appropriate and accurate information to Ms. Denny Stoops concerning the likely and potential causes of her pelvic pain.

**WHEREFORE**, Donna M. Perrotti, Individually and as Executor of the Estate of Kelly Ann Denny Stoops, deceased, respectfully demands judgment against Defendants for sums in excess of the local arbitration limits of $150,000.00, exclusive of prejudgment interest and post-

judgment interest. Plaintiff also demands punitive damages against Dr. Rittenhouse, Sacred

Heart Hospital of Allentown and Sacred Heart Healthcare System

## THIRD CAUSE OF ACTION – WRONGFUL DEATH

### PLAINTIFF, DONNA M. PERROTTI, AS EXECUTOR OF THE ESTATE OF KELLY ANN DENNY STOOPS, DECEASED v. DR. RITTENHOUSE; LEHIGH VALLEY WOMEN'S MEDICAL SPECIALTIES; SACRED HEART HOSPITAL OF ALLENTOWN; AND SACRED HEART HEALTHCARE SYSTEM

105. The preceding paragraphs of this Complaint are incorporated as though fully set

forth herein.

106. Plaintiff, Donna M. Perrotti, as Executor of the Estate of Kelly Ann Denny

Stoops, deceased, brings this Wrongful Death action on behalf of the beneficiaries under and by

virtue of the Acts of 1855, P.L. 309, as amended, 42 Pa. C.S.A. § 8301, the applicable Rules of

Civil Procedure and decisional law.

107. As a result of the negligent, careless and/or reckless acts and omissions of the

Defendants, as set forth above, Plaintiff's Decedent, Kelly Ann Denny Stoops, was caused grave

injuries and death resulting in the entitlement to damages by said beneficiaries under the

Wrongful Death Act.

108. Plaintiff, Donna M. Perrotti, as Executor of the Estate of Kelly Ann Denny

Stoops, deceased, claims damages for all administrator's expenses recoverable under the

Wrongful Death Act, including, but not limited to, damages for hospital, medical, funeral, and

burial expenses, and expenses of administration necessitated by reason of injuries causing

Decedent's death.

109. Plaintiff, Donna M. Perrotti, as Executor of the Estate of Kelly Ann Denny

Stoops, deceased, claims damages for loss of the monetary support that Decedent would have

provided to Kelly Ann Denny Stoops's beneficiaries during the Decedent's lifetime, including,

29

but not limited to, earnings, maintenance, support, and other similar losses recognized under the Wrongful Death Act that her beneficiaries would have received for the rest of Decedent's natural life.

110.   Plaintiff, Donna M. Perrotti, as Executor of the Estate of Kelly Ann Denny Stoops, deceased, claims under the Wrongful Death Act damages for the services provided or which could have been expected to have been performed in the future by Decedent.

111.   Plaintiff, Donna M. Perrotti, as Executor of the Estate of Kelly Ann Denny Stoops, deceased, claims damages under the Wrongful Death Act for all pecuniary losses suffered by beneficiaries.

112.   Plaintiff, Donna M. Perrotti, as Executor of the Estate of Kelly Ann Denny Stoops, deceased, claims under the Wrongful Death Act damages to compensate beneficiaries for the loss of contribution between the time of death and today, and the amount of support that Decedent would have contributed in the future.

113.   Plaintiff, Donna M. Perrotti, as Executor of the Estate of Kelly Ann Denny Stoops, deceased, claims on behalf of the Wrongful Death Act beneficiaries damages under the Wrongful Death Act for loss of guidance, tutelage, comfort, society, services and support, and other similar losses recognized under the Wrongful Death Act that would have been provided by Decedent.

114.   Plaintiff, Donna M. Perrotti, as Executor of the Estate of Kelly Ann Denny Stoops, deceased, claims on behalf of the Wrongful Death Act beneficiaries damages under the Wrongful Death Act damages for the loss of companionship, comfort, society, guidance, solace and protection of Decedent.

115.   Plaintiff, Donna M. Perrotti, as Executor of the Estate of Kelly Ann Denny Stoops, deceased, claims under the Wrongful Death Act the full measure of damages allowed

under the law and under the categories of administrator's expenses, support and services as defined under the laws of the Commonwealth of Pennsylvania.

**WHEREFORE**, Donna M. Perrotti, Individually and as Executor of the Estate of Kelly Ann Denny Stoops, deceased, respectfully demands judgment against Defendants for sums in excess of the local arbitration limits of $150,000.00, exclusive of interest, prejudgment interest and post-judgment interest.  Plaintiff also demands punitive damages against Dr. Rittenhouse, Sacred Heart Hospital of Allentown and Sacred Heart Healthcare System.

**FOURTH CAUSE OF ACTION – SURVIVAL**

**PLAINTIFF, DONNA M. PERROTTI, AS EXECUTOR OF THE ESTATE OF KELLY ANN DENNY STOOPS, DECEASED v. DR. RITTENHOUSE; LEHIGH VALLEY WOMEN'S MEDICAL SPECIALTIES; SACRED HEART HOSPITAL OF ALLENTOWN; AND SACRED HEART HEALTHCARE SYSTEM**

116.    The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

117.    Plaintiff, Donna M. Perrotti, as Executor of the Estate of Kelly Ann Denny Stoops, deceased, brings this Survival Action on behalf of the Estate of Kelly Ann Denny Stoops, deceased, under and by virtue of 42 Pa. C.S.A. § 8302, the applicable Rules of Civil Procedure and decisional law.

118.    As a result of the negligence, wrongful conduct and misconduct of Defendants, as set forth above, Kelly Ann Denny Stoops was caused grave injuries and death resulting in the entitlement to damages by said beneficiaries under the Survival Act.

119.    As a result of the death of Kelly Ann Denny Stoops, her Estate has been deprived of the economic value of her life expectancy and Plaintiff, Donna M. Perrotti, as Executor of the Estate of Kelly Ann Denny Stoops, deceased, and on behalf of Survival Act beneficiaries, claim under the Survival Act, damages for all pecuniary losses suffered by the Estate as a result of her

death, including all loss of income, earnings, retirement income and benefits and Social Security income, until death, as a result of Decedent's death.

120.   Plaintiff, Donna M. Perrotti, as Executor of the Estate of Kelly Ann Denny Stoops, deceased, and on behalf of Survival Act beneficiaries, further claim under the Survival Act the total amount that Decedent would have earned between today and the end of his life expectancy. Plaintiff especially seeks the total amount of future lost earning capacity, including, but not limited to, the total amount of future lost earnings and earning capacity, including, but not limited to, the total lost future net earnings for Decedent, less her cost of personal maintenance.

121.   Plaintiff, Donna M. Perrotti, as Executor of the Estate of Kelly Ann Denny Stoops, deceased, and on behalf of Survival Act beneficiaries, further claims under the Survival Act damages for embarrassment, disfigurement, humiliation and mental anguish.

122.   Plaintiff, Donna M. Perrotti, as Executor of the Estate of Kelly Ann Denny Stoops, deceased, and on behalf of Survival Act beneficiaries, further claims under the Survival Act damages for the conscious pain and suffering and inconvenience endured by Decedent prior to her death, including, but not limited to, physical pain and suffering, mental pain and suffering and the fright and mental suffering attributed to the peril leading to Decedent's death.

123.   Plaintiff, Donna M. Perrotti, as Executor of the Estate of Kelly Ann Denny Stoops, deceased, claims the full measure of damages under the Survival Act and decisional law interpreting said Act.

**WHEREFORE**, Donna M. Perrotti, Individually and as Executor of the Estate of Kelly Ann Denny Stoops, deceased, respectfully demands judgment against Defendants for sums in excess of the local arbitration limits of $150,000.00, exclusive of prejudgment interest and post-judgment interest. Plaintiff also demands punitive damages against Dr. Rittenhouse, Sacred

Heart Hospital of Allentown and Sacred Heart Healthcare System.

## FIFTH CAUSE OF ACTION – PUNITIVE DAMAGES

### PLAINTIFF, DONNA M. PERROTTI, AS EXECUTOR OF THE ESTATE OF KELLY ANN DENNY STOOPS, DECEASED v.  SACRED HEART HOSPITAL OF ALLENTOWN AND SACRED HEART HEALTHCARE SYSTEM

124.    The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

125.    The conduct of Sacred Heart Hospital of Allentown and Sacred Heart Healthcare System in continuing to employ Dr. Rittenhouse despite his known and ongoing issues with addiction and/or substance abuse was grossly negligent and careless and was in outrageous and reckless disregard of the personal safety and interest of Kelly Ann Denny Stoops.

126.    The conduct of Sacred Heart Hospital of Allentown and Sacred Heart Healthcare System in continuing to employ Dr. Rittenhouse despite his indefinitely suspended license to practice medicine was grossly negligent and careless and was in outrageous and reckless disregard of the personal safety and interest of Kelly Ann Denny Stoops.

127.    The conduct of Sacred Heart Hospital of Allentown and Sacred Heart Healthcare System in continuing to employ Dr. Rittenhouse after the Pennsylvania State Medical Board determined he was unable to practice medicine with reasonable skill and safety by reason of addiction and/or substance abuse was in outrageous and reckless disregard of the personal safety and interest of Kelly Ann Denny Stoops.

128.    The conduct of Sacred Heart Hospital of Allentown and Sacred Heart Healthcare System in continuing to employ Dr. Rittenhouse despite the violation of his probation by reason of a urine screen positive for Schedule IV controlled substances was grossly negligent and careless and was in outrageous and reckless disregard of the personal safety and interest of Kelly Ann Denny Stoops.

129.    The conduct of Sacred Heart Hospital of Allentown and Sacred Heart Healthcare System in continuing to employ Dr. Rittenhouse despite his urine screen positive for Schedule IV controlled substances was grossly negligent and careless and was in outrageous and reckless disregard of the personal safety and interest of Kelly Ann Denny Stoops.

130.    The conduct of Sacred Heart Hospital of Allentown and Sacred Heart Healthcare System in continuing to employ Dr. Rittenhouse despite his admittance to a residential treatment facility for substance abuse was grossly negligent and careless and was in outrageous and reckless disregard of the personal safety and interest of Kelly Ann Denny Stoops.

131.    The conduct of Sacred Heart Hospital of Allentown and Sacred Heart Healthcare System in failing to monitor Dr. Rittenhouse's practice of medicine despite his known and ongoing issues with addiction and/or substance abuse was grossly negligent and careless and was in outrageous and reckless disregard of the personal safety and interest of Kelly Ann Denny Stoops.

132.    The conduct of Sacred Heart Hospital of Allentown and Sacred Heart Healthcare System in failing to monitor Dr. Rittenhouse's practice of medicine as required by the Pennsylvania State Board of Medicine was grossly negligent and careless and was in outrageous and reckless disregard of the personal safety and interest of Kelly Ann Denny Stoops.

133.    The conduct of Sacred Heart Hospital of Allentown and Sacred Heart Healthcare System in failing to inform patients about Dr. Rittenhouse's known and ongoing issues with addiction and/or substance abuse was grossly negligent and careless and was in outrageous and reckless disregard of the personal safety and interest of Kelly Ann Denny Stoops.

134.    The conduct of Sacred Heart Hospital of Allentown and Sacred Heart Healthcare System in failing to inform patients about Dr. Rittenhouse's indefinitely suspended medical

license was grossly negligent and careless and was in outrageous and reckless disregard of the personal safety and interest of Kelly Ann Denny Stoops.

135.    The conduct of Sacred Heart Hospital of Allentown and Sacred Heart Healthcare System in failing to inform patients about Dr. Rittenhouse's urine screen positive for Schedule IV controlled substances was grossly negligent and careless and was in outrageous and reckless disregard of the personal safety and interest of Kelly Ann Denny Stoops.

136.    The conduct of Sacred Heart Hospital of Allentown and Sacred Heart Healthcare System in failing to inform patients about Dr. Rittenhouse's admittance to a residential treatment facility for substance abuse was grossly negligent and careless and was in outrageous and reckless disregard of the personal safety and interest of Kelly Ann Denny Stoops.

137.    The conduct of Sacred Heart Hospital of Allentown and Sacred Heart Healthcare System in failing to inform patients that Dr. Rittenhouse was required to be monitored while practicing medicine was grossly negligent and careless and was in outrageous and reckless disregard of the personal safety and interest of Kelly Ann Denny Stoops.

138.    The conduct committed by Sacred Heart Hospital of Allentown and Sacred Heart Healthcare System, as set forth at length in Plaintiff's Complaint and incorporated herein by reference as if set forth at length, was intentional and reckless.

139.    The facts demonstrate that the conduct of Sacred Heart Hospital of Allentown and Sacred Heart Healthcare System, as set forth at length in Plaintiff's Complaint and incorporated herein by reference as if set forth at length, entitle Plaintiff to an award of punitive damages and, therefore, Plaintiff claims punitive damages against Defendants Sacred Heart Hospital of Allentown and Sacred Heart Healthcare System.

**WHEREFORE**, Donna M. Perrotti, Individually and as Executor of the Estate of Kelly Ann Denny Stoops, deceased, respectfully demands judgment against Defendants, as well as

35

punitive damages, for sums in excess of the local arbitration limits of $150,000.00, exclusive of prejudgment interest and post-judgment interest.

### SIXTH CAUSE OF ACTION – PUNITIVE DAMAGES

### PLAINTIFF, DONNA M. PERROTTI, AS EXECUTOR OF THE ESTATE OF KELLY ANN DENNY STOOPS, DECEASED v. DR. RITTENHOUSE

140.     The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

141.     The conduct of Dr. Rittenhouse in continuing to practice medicine despite his known and ongoing issues with addiction and/or substance abuse was grossly negligent and careless and was in outrageous and reckless disregard of the personal safety and interest of Kelly Ann Denny Stoops.

142.     The conduct of Dr. Rittenhouse in continuing to practice medicine without supervision in violation of the terms of his probation was grossly negligent and careless and was in outrageous and reckless disregard of the personal safety and interest of Kelly Ann Denny Stoops.

143.     The conduct of Dr. Rittenhouse in continuing to practice medicine after the Pennsylvania State Medical Board determined he was unable to practice medicine with reasonable skill and safety by reason of addiction and/or substance abuse was in outrageous and reckless disregard of the personal safety and interest of Kelly Ann Denny Stoops.

144.     The conduct of Dr. Rittenhouse in continuing to practice medicine after violating his probation by reason of a urine screen positive for Schedule IV controlled substances was grossly negligent and careless and was in outrageous and reckless disregard of the personal safety and interest of Kelly Ann Denny Stoops.

145.    The conduct of Dr. Rittenhouse in continuing to practice medicine after his admittance to a residential treatment facility for substance abuse was grossly negligent and careless and was in outrageous and reckless disregard of the personal safety and interest of Kelly Ann Denny Stoops.

146.    The conduct of Dr. Rittenhouse in failing to inform patients about his known and ongoing issues with addiction and/or substance abuse was grossly negligent and careless and was in outrageous and reckless disregard of the personal safety and interest of Kelly Ann Denny Stoops.

147.    The conduct of Dr. Rittenhouse in failing to inform patients about his indefinitely suspended medical license was grossly negligent and careless and was in outrageous and reckless disregard of the personal safety and interest of Kelly Ann Denny Stoops.

148.    The conduct of Dr. Rittenhouse in failing to inform patients about his urine screen positive for Schedule IV controlled substances was grossly negligent and careless and was in outrageous and reckless disregard of the personal safety and interest of Kelly Ann Denny Stoops.

149.    The conduct of Dr. Rittenhouse in failing to inform patients about his admittance to a residential treatment facility for substance abuse was grossly negligent and careless and was in outrageous and reckless disregard of the personal safety and interest of Kelly Ann Denny Stoops.

150.    The conduct of Dr. Rittenhouse in failing to inform patients that he was required to be monitored while practicing medicine was grossly negligent and careless and was in outrageous and reckless disregard of the personal safety and interest of Kelly Ann Denny Stoops.

151.    The conduct committed by Dr. Rittenhouse, as set forth at length in Plaintiff's Complaint and incorporated herein by reference as if set forth at length, was intentional and reckless.

37

152.    The facts demonstrate that the conduct of Dr. Rittenhouse, as set forth at length in Plaintiff's Complaint and incorporated herein by reference as if set forth at length, entitle Plaintiff to an award of punitive damages and, therefore, Plaintiff claims punitive damages against Defendant Dr. Rittenhouse.

**WHEREFORE**, Donna M. Perrotti, Individually and as Executor of the Estate of Kelly Ann Denny Stoops, deceased, respectfully demands judgment against Defendant, as well as punitive damages, for sums in excess of the local arbitration limits of $150,000.00, exclusive of prejudgment interest and post-judgment interest.

## CLAIM FOR RELIEF

**WHEREFORE**, Plaintiff requests that judgment be entered against all Defendants for damages to be determined at trial, and for all other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all issues.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

BY:    _____
SHANIN SPECTER, ESQUIRE
PA 40928
shanin.specter@klinespecter.com

_____
AMY L. GUTH, ESQUIRE
PA 44204
amy.guth@klinespecter.com

38

TRACIE L. PALMER, ESQUIRE
PA 312098
tracie.palmer@klinespecter.com

*Attorneys for Plaintiff*
1525 Locust Street
Philadelphia, PA 19102
215-772-1000
215-735-0937 (f)

Date: 6/30/17